IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TATE GETCHELL and BENJAMIN SUN, | CV 22-101-BLG-SPW-TJC |
| Plaintiffs, | |
| vs. | **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |
| JMA VENTURES, LLC, d/b/a RED LODGE MOUNTAIN RESORT, | |
| Defendant. | |

Pending before the Court are Defendant JMA Ventures, LLC's Motion for Partial Summary Judgment (Doc. 48) and Plaintiffs Tate Getchell and Benjamin Sun's Motion for Partial Summary Judgment (Doc. 52). The Court held a hearing on the motions on April 8, 2024. (Doc. 71.) The motions are fully briefed and ripe for the Court's review. (*See* Docs. 50, 53, 63, 65, 67, 68.)

For the following reasons, the Court recommends that Defendant's Motion for Partial Summary Judgment be DENIED and that Plaintiffs' Motion for Partial Summary Judgment be GRANTED in part and DENIED in part.

/ / /

/ / /

/ / /

1

I.    **BACKGROUND**[1]

A.    **Chairlift Incident**

On December 5, 2020, Plaintiffs Getchell and Sun ("Plaintiffs") visited Red Lodge Mountain Resort ("Defendant") in Red Lodge, Montana.  (Docs. 64 at 2; 66 at 2.)  Plaintiffs purchased day tickets for the ski lift so Getchell could ski and Sun could snowboard.  (Docs. 64 at 2; 66 at 2.)  After their first run of the day, Plaintiffs decided to go up Defendant's Willow Creek chairlift.  (Docs. 64 at 5; 66 at 3.)

The Willow Creek chairlift is a fixed-grip chairlift that uses clips to hold the chairs to a haul rope.  (Doc. 64 at 15.)  A sign posted at the loading area of the Willow Creek chairlift instructs riders to "please keep tips pointed straight up while loading."  (*Id.* at 6.)  When it was their turn in line, Plaintiffs loaded into and sat down in chair number 106.  (*Id.* at 5, 8; Doc. 66 at 3–4.)  The parties dispute whether Sun's snowboard was pointed straight up when he and Getchell loaded onto the chairlift.  (*See* Doc. 64 at 6–7.)  Nevertheless, the parties agree that upon Plaintiffs sitting on chair 106, the chair fell off the chairlift's haul rope, and Plaintiffs fell to the ground.  (*Id.* at 8; Doc. 66 at 4–5.)

---

[1] The factual background is taken from the facts in Defendant's Statement of Undisputed Facts (Doc. 49) that were not disputed by Plaintiffs' Statement of Disputed Facts (Doc. 64), and the facts in Plaintiffs' Statement of Undisputed Facts (Doc. 54) that were not disputed by Defendant's Statement of Disputed Facts (Doc. 66).

Defendant's lift attendant stopped the chairlift when he noticed the chair had detached from the haul rope.  (Doc. 64 at 9.)  A ski patroller responded to the incident. Sun reported to the ski patroller that his shoulder was sore, and he proceeded to snowboard down the mountain to the first aid room.  (*Id.* at 11–12.) Getchell claimed no injuries and refused any care from Defendant.  (*Id.* at 12.)

Defendant's lift manager responded to the scene and conducted an inspection, finding no damage to chair 106, the clip, or the haul rope.  (*Id.* at 15.) The clip that attached the chair to the haul rope remained intact on the chair, with the cotter pin still securing the clip to the chair.  (*Id.* at 10–11.)  As of December 21, 2023, this clip remains in place on chair number 106, and has not required any repairs since the incident on December 5, 2020.  (*Id.* at 11.)

## B.    Subsequent Medical Treatment

### 1.    Plaintiff Sun

After Defendant's first aid room staff evaluated and iced Sun's shoulder, he left the resort.  (Doc. 66 at 16.)  Sun later sought additional care at Beartooth Billings Clinic in Red Lodge.  (*Id.* at 16–17.)  The physician at Beartooth Billings Clinic determined that Sun suffered an acromioclavicular ("AC") sprain, placed him in a sling, and ordered that Sun use anti-inflammatories and engage in range-of-motion exercises.  (*Id.* at 17.)  An X-ray revealed no acute fractures.  (*Id.*)

On December 8, 2020, Sun spoke with a physician at Rocky Mountain

3

Regional Veterans Affairs Medical Center in Aurora, Colorado, complaining of pain; the physician ordered a magnetic resonance imaging test ("MRI").  (*Id.* at 17–18.)  The MRI of his shoulder revealed "a mild AC joint arthrosis with a potential for a low-grade AC separation, mild supraspinatus tendinosis, mild subacromial/subdeltoid bursitis, and possible minor biceps tenosynovitis."  (*Id.* at 18.)

On December 29, 2020, Sun underwent a physical therapy evaluation, where the physical therapist advised Sun that, with the proper self-care and inflammation management, he would receive relief from his AC joint sprain at approximately six weeks post-incident.  (*Id.*)  The parties dispute whether, and to what extent, Sun followed these recommendations.  (*See id.* at 18–20.)

### 2.   Plaintiff Getchell

Although Getchell refused medical care at the Defendant's first aid center immediately following the incident, he too sought care later in the day at Beartooth Billings Clinic, and was diagnosed with a mild concussion.  (*Id.* at 20–21.)

On December 8, 2020, Getchell received care at the Billings Clinic emergency room, complaining of a headache and neck pain.  (*Id.* at 21.)  The doctor seeing him concluded that Getchell likely had a concussion, recommended rest, and advised that he see his primary care provider and that he return to the emergency room if his symptoms worsened.  (*Id.*)  On December 13, 2020,

Getchell returned to the Billings Clinic emergency room due to ongoing symptoms, and the attending physician again recommended rest.  (*Id.* at 22.)

On December 24, 2020, Getchell saw a physician at Riverstone Health in Billings, Montana, who referred him to Billings Clinic Neurology.  (*Id.* at 23.)  On January 12, 2020, Getchell saw a physician at Billings Clinic Neurology, who characterized Getchell's injury as some form of traumatic brain injury.  He was advised that it could take up to six months to heal, and the physician wrote a note stating that Getchell could work only 20 hours per week.  (*Id.* at 23–24.)  Beginning on January 25, 2021, Getchell underwent five days of treatment at the Functional Neurology Center.  (*Id.* at 25.)

More than eight months later, in September 2021, Getchell returned to the physician he had seen at Riverstone Health, and they discussed Getchell receiving a neuropsychological evaluation.  (*Id.* at 25–26.)  Approximately five months later, beginning on February 24, 2022, Getchell underwent a neuropsychological evaluation, and he was diagnosed with a mild neurocognitive disorder resulting from some level of traumatic brain injury sustained in December 2020 secondary to the ski lift accident.  (*Id.* at 26.)  The doctor indicated that Getchell might benefit from physical therapy and mental health treatment.  (*Id.*)  The parties dispute whether, and to what extent, Getchell followed these recommendations.  (*See id.* at 26–28.)

### C.    Procedural Posture

On September 20, 2022, Plaintiffs brought suit against Defendant.  (Doc. 1.)

In their Complaint, Plaintiffs collectively alleged two causes of action—negligence

and res ipsa loquitur.  (*Id.* at 3–4.)  Plaintiffs alleged they "incurred medical

expenses, may incur future medical expenses, have lost earnings and earning

capacity, have suffered a change in the course of their lifestyles, and have suffered

physical pain as well as mental anguish."  (*Id.* at 4.)

The parties have filed cross motions for partial summary judgment.  (Docs.

48, 52.)  Defendant seeks summary judgment on Plaintiffs' cause of action for res

ipsa loquitur.  (Doc. 48 at 1.)  In turn, Plaintiffs also seek summary judgment on

their res ipsa loquitur claim.  (Doc. 52 at 2.)  Plaintiffs further seek summary

judgment on Defendant's affirmative defenses that Plaintiffs' claims are barred by

a release, that Plaintiffs failed to mitigate their damages, and that Getchell's claim

is barred by his own negligence.  (*Id.* at 2; *see* Doc. 2 at 4.)

## II.    LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits

show that there is "no genuine dispute as to any material fact and that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).

Material facts are those that may affect the outcome of the case.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. (quoting Fed. R. Civ. P. 56(e)).

"A grant of partial summary judgment is appropriate where genuine disputes of material fact exist for only some claims." *Hernandez v. Marion Cty.*, 2017 WL 6029605, at *2 (D. Or. Dec. 3, 2017). "In resolving a motion for partial summary adjudication, the court must apply the same standards and criteria used for

evaluating full motions for summary judgment." *Churchill v. Trinity Universal Ins. Co.*, 2010 WL 11468358, at *3 (D. Mont. Mar. 2, 2010) (citing *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998)).

In ruling on cross-motions for summary judgment, courts "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

## III.   DISCUSSION

### A.   Defendant's Motion for Partial Summary Judgment

Defendant argues that Count II of Plaintiffs' Complaint, which alleges a cause of action for res ipsa loquitur, should be dismissed because that doctrine is inapplicable under the facts of this case.  Defendant argues that the application of res ipsa loquitur requires that the instrumentality causing a plaintiff's injury to be in the exclusive control of the defendant.  (Doc. 50 at 15–20.)   Additionally, Defendant argues that res ipsa loquitur cannot apply if there is a question of fact regarding whose conduct caused the injuries.  (*Id*. at 20.)

Plaintiffs argue that the undisputed facts establish that each element of res ipsa loquitur is met under Montana Supreme Court precedent.  (Doc. 63 at 20–21.) Alternatively, if the Court does not find all elements are satisfied, Plaintiffs argue the Court should deny summary judgment on the ground that there is a dispute of

material fact.  (*Id.* at 5–6.)

### 1.    Elements of Res Ipsa Loquitur

Under Montana law, "[t]he doctrine of res ipsa loquitur, meaning 'the thing speaks for itself,' allows the jury, under certain circumstances, to infer negligence by the defendant relating to the occurrence of an event when the plaintiff is unable to establish the causal connection between the defendant's negligence and the resulting injury." *Bonilla v. Univ. of Mont.*, 116 P.3d 823, 827 (Mont. 2005).  In other words, res ipsa loquitur "permits proof of what happened to be made by circumstantial evidence." *Dalton v. Kalispell Reg'l Hosp.*, 846 P.2d 960, 963 (Mont. 1993) (quoting *Clark v. Norris*, 734 P.2d 182, 185 (Mont. 1987)).

Montana Supreme Court case law on the application of this doctrine has been somewhat inconsistent.  *See Tompkins v. Nw. Union Trust Co.*, 645 P.2d 402, 413 (Mont. 1982) (Weber, J., dissenting) ("As I read various of the Montana cases on res ipsa loquitur I am frankly puzzled as to the status of res ipsa in Montana."). For example, there appears to be conflicting statements from the Montana Supreme Court on the required elements for application of the doctrine, and specifically on the issue presented by Defendant's motion: whether res ipsa loquitur requires the instrumentality causing the plaintiff's injuries to be in the *exclusive control* of the defendant.  Plaintiffs argue that the Court should apply the Restatement standard of res ipsa loquitur, which does not require exclusive control.  (Doc. 63 at 12.)

Defendant, on the other hand, argues the opposite position, contending that the Montana Supreme Court has discarded application of the Restatement standard in recent cases.  (Doc. 50 at 24.)

The Montana Supreme Court directly addressed the exclusive control issue in *Tompkins*.  In that case, the plaintiffs brought an action on behalf of a passenger who died in the crash of an airplane.  645 P.2d at 403.  The plaintiffs' theory relied on res ipsa loquitur to establish liability.  *Id.* at 404.  The defendant persuasively argued at trial, however, that "the decedent pilot did not have the requisite degree of control required for application of the res ipsa doctrine."  *Id.* at 405.  Therefore, the district court omitted plaintiffs' theory of res ipsa loquitur from the jury instructions.  *Id.* at 404.  The jury returned a verdict for the defendant.  *Id.*

On appeal, the Montana Supreme Court reversed.  In discussing the issue of exclusive control, the court acknowledged that some of its earlier decisions had described res ipsa loquitur as follows:

> When an instrumentality which causes injury, without any fault of the injured person, is under the exclusive control of the defendant at the time of injury, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, then the law infers negligence on the part of the one in control as the cause of injury.

*Tompkins*, 645 P.2d at 406 (quoting *Little v. Grizzly Mfg.*, 636 P.2d 839, 843 (1981)).  The court said this passage was "an accurate statement of the law."  *Id.* But on the question whether "exclusive and sole control was a necessary element

10

of a res ipsa case," the court made clear that "it is not." *Id.* Instead, the court

defined Montana's doctrine of res ipsa loquitur as being consistent with the

Restatement of Torts, Second:

> It may be inferred that harm suffered by the plaintiffs is caused by negligence of the defendant when: (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

*Tompkins*, 645 P.2d at 406 (quoting Restatement (Second) of Torts § 328D (Am.

Law Inst. 1965)).

The court has reaffirmed on several occasions its adoption of this definition

of res ipsa loquitur as the law in Montana. *See Bonilla*, 116 P.3d at 827; *Valley*

*Props. Ltd. P'ship v. Steadman's Hardware, Inc.*, 824 P.2d 250, 254 (Mont. 1992)

("This Court has stated the doctrine of res ipsa loquitur in the following terms . . .

."); *Brothers v. Gen. Motors Corp.*, 658 P.2d 1108, 1110 (Mont. 1983) ("In

*Tompkins*, we quoted the Restatement (Second) of Torts, § 328D, as properly

stating the doctrine of res ipsa loquitur . . . ."); *Barmeyer v. Mont. Power Co.*, 657

P.2d 594, 601 (Mont. 1983) ("In the *Tompkins* case, . . . we recited the following

elements necessary for the application of the doctrine . . . .").

This Court has mostly followed suit. *See Alexander v. Mont.-Dakota Utils.*

*Co.*, 2020 WL 12308981, at *1 (D. Mont. Aug. 10, 2020) ("Montana has outlined

the following elements that a party must satisfy to prevail on a res ipsa loquitur

claim . . . ."); *St. Paul Cos. v. Constr. Mgmt. Co.*, 96 F. Supp. 2d 1094, 1097–98

(D. Mont. 2000) ("In *Tompkins* . . . , the Montana Supreme Court quoted the

Restatement (Second) of Torts, § 328D, as properly stating the doctrine of res ipsa

loquitur as follows . . . .").

    Nevertheless, express recognition of the Restatement elements since

*Tompkins* has not been uniform.  At times, the Montana Supreme Court, and this

Court, have reached back to res ipsa loquitur discussions in pre-*Tompkins* cases.  In

its most recent published opinion discussing the doctrine, for example, the

Montana Supreme Court again described res ipsa loquitur as

> permit[ting] an inference of negligence on the part of one in control of
> an instrumentality which causes injury when (1) the injury occurs
> without any fault of the injured person; (2) the instrumentality is under
> the exclusive control of the defendant at the time of the injury; and (3)
> the injury is such as in the ordinary course of things does not occur if
> the one having such control uses proper care.

*Howard v. St. James Cmty. Hosp.*, 129 P.3d 126, 132 (Mont. 2006) (quoting

*Romans v. Lusin*, 997 P.2d 114, 119 (Mont. 2000)).

    Defendant also cites a pair of post-*Tompkins* decisions of the Montana

Supreme Court which reference exclusive control.  First, in *Dalton*, the Montana

Supreme Court affirmed the district court's conclusion that res ipsa loquitur was

inapplicable because "the 'exclusive control' element of res ipsa loquitur is not met

under these facts."  846 P.2d at 963.  Second, Defendant cites *Contreras v. Vannoy*

*Heating & Air Conditioning*, 892 P.2d 557 (Mont. 1995), where the court cited to *Dalton* in characterizing exclusive control as an "element" encompassed within the doctrine of res ipsa loquitur. *Id.* at 563.

Nevertheless, none of these cases overrule, or even address, the Montana Supreme Court's extensive discussion of this issue in *Tompkins*. *See S.W. v. State*, ___ P.3d ___, 415 Mont. 437, 446 (Mont. 2024) (plurality opinion) ("Cases that do not analyze relevant issues . . . are not binding authority and do not persuade . . . , particularly when faced with binding precedent that is directly on point . . . ."). Additionally, the cases are not inconsistent with the application of res ipsa loquitur in *Tompkins*.

First, it is unremarkable that cases from the Montana Supreme Court continue to discuss the issue of exclusive control in connection with the res ipsa loquitur doctrine. As recognized by the Restatement, a plaintiff may sustain its burden of establishing the second requirement of the doctrine—that other possible causes are sufficiently eliminated by the evidence—by showing that the cause of an event is within the defendant's responsibility or that the defendant is responsible for all reasonable probable causes of the event. Restatement (Second) of Torts § 328D cmt. g. The Restatement points out that this is typically done by showing that the instrumentality that caused the plaintiff's injury was under the exclusive control of the defendant. But both the Restatement and the Montana Supreme

Court have made clear that exclusive control is not an indispensable element.  In discussing exclusive control in *Tompkins*, the Montana Supreme Court quoted from comment g to § 328D, as follows:

> [Exclusive control] is not, however, necessary to the inference that the defendant have such exclusive control; and exclusive control is merely one way of proving his responsibility.  He may be responsible, and the inference may be drawn against him, where he shares the control with another, as in the case of the fall of a party wall which each of two landowners is under a duty to inspect and maintain. . . . Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a res ipsa loquitur case.  The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against.

*Tompkins*, 645 P.2d at 406.  Consistent with these principles, the Montana Supreme Court observed that "proof of exclusive control assists the plaintiff in establishing probable cause in a res ipsa loquitur case.  However, concurrent causes may exist and yet not foreclose reliance upon res ipsa loquitur."  *Id*.

Moreover, the question of control was not dispositive in the Montana Supreme Court's post-*Tompkins* decisions cited by Defendant.  In *Howard* and *Contreras*, for example, the court was not reviewing whether the district court had properly granted or denied summary judgment on the question of res ipsa loquitur, but whether the district court's refusal to instruct the jury on the doctrine constituted an abuse of discretion.  *Howard*, 129 P.3d at 130, 132; *Contreras*, 892 P.2d at 563.  In neither case did the court's decision hinge on whether exclusive

14

control was an essential element.  Further, in *Dalton*, the Montana Supreme Court had already concluded before any discussion of exclusive control that the plaintiff's purpose in asserting the doctrine—"to avoid producing the expert testimony required to establish a prima facie case of duty of care and breach thereof"—was "an inappropriate application of res ipsa loquitur."  846 P.2d at 963.

Defendant also cites a pair of prior decisions of this Court.  In *Fletcher v. United States*, the Court briefly acknowledged the plaintiff's res ipsa loquitur argument and quoted a definition of the doctrine akin to the one cited in *Howard*.  2017 WL 9324782, at *7 (D. Mont. Oct. 11, 2017), *findings and recommendations adopted*, 2017 WL 5465520 (D. Mont. Nov. 14, 2017).  Again, however, the Court must note here that this *Howard* definition of res ipsa loquitur was not a reformulation that displaced prior case law.  The *Tompkins* court had acknowledged years before that this definition was "an accurate statement of the law," while clarifying that exclusive control was not a necessary element of the claim.  *See* 645 P.2d at 406.  Regardless, in *Fletcher*, the Court brushed off the plaintiff's argument, noting that "res ipsa loquitur may not be used to supplant the requirement of expert testimony regarding standard of care and breach in a malpractice case."  2017 WL 9324782 at *7.

Defendant's citation to this Court's decision in *Looman v. Montana* raises a more significant question.  2013 WL 587344, at *5 (D. Mont. Jan. 31, 2013),

*findings and recommendations adopted*, 2013 WL 587340 (D. Mont. Feb. 13, 2013).  In that case, the Court concluded that, because the brake cannister that injured the plaintiff was not in the exclusive control of the defendants, "the undisputed facts in this case render the doctrine of res ipsa loquitur inapplicable as a matter of law."  2013 WL 587344 at *5.  By doing so, the Court implied that exclusive control was a necessary element of the claim, in contradiction to the Montana Supreme Court's exposition of the doctrine in *Tompkins* and later cases.  *See, e.g.*, *Brothers*, 658 P.2d at 1111 ("[W]e have stated that exclusive control over the situation is not a necessary element of a res ipsa case . . . .").

Regardless of how the Court framed it, however, res ipsa loquitur was indeed "inapplicable as a matter of law" under those facts.  *Looman*, 2013 WL 587344 at *5.  Although the plaintiff was injured performing work on a truck belonging to one defendant and at the direction of other defendants, the circumstances provided no basis for asserting res ipsa loquitur.  *See id.* at *1.  The undisputed facts established that "at the moment the end cap of the brake canister came off and injured Looman[,] the instruments of Looman's injuries were under *his* control by virtue of his conduct in loosening the spring-side clamp."  *Id.* at *5 (emphasis added).  In other words, when viewed within the framework of the Restatement standard, the plaintiff could not establish that other responsible causes, including the conduct of the plaintiff, were sufficiently eliminated by the

16

evidence.  *See Bonilla*, 116 P.3d at 827.

The Court concludes that the Restatement test adopted in *Tompkins* remains the law in Montana and provides the necessary elements the plaintiff must show to submit res ipsa loquitur to the jury.  Rather than having the burden of showing "exclusive control" in the strictest sense of the term, Plaintiffs need only show that other responsible causes, including their conduct and the conduct of third persons, are sufficiently eliminated by the evidence.

### 2.   Whether Defendant Is Entitled to Summary Judgment Under the Restatement Standard

Defendant argues that, even under the Restatement standard, it is entitled to summary judgment on the issue of res ipsa loquitur.  (Doc. 50 at 23–24.) Defendant asserts that the evidence does not sufficiently eliminate other responsible causes—in particular, Sun's own actions while loading onto the chair lift.  (*Id.* at 25–27.)  Defendant contends that Plaintiffs exercised "a certain degree of control" over the chair and chairlift, as all passengers can affect the chair's movement and momentum by dragging their skis or snowboard on the ground.  (*Id.* at 16.)  Further, Defendant contends that Sun placed his snowboard perpendicular to the loading ramp, and—with Plaintiffs' combined weight of approximately 490 pounds at the time of the accident—that this would have created sufficient force to cause the chair's detachment.  (*Id.* at 21.)  Defendant points out that even Plaintiffs have acknowledged the chair did not fall from the haul rope until "[a]fter the

Plaintiffs mounted the chairlift."  (*Id.* at 17 (quoting Doc. 1 at 3).)

Plaintiffs dispute Defendant's "misload" theory (*see* Doc. 50 at 26) and contend that both Plaintiffs, including Sun with his snowboard, properly loaded into the chair.  (Doc. 63 at 14.)  Accordingly, they argue that the evidence sufficiently eliminates all other responsible causes besides Defendant's negligence. (*Id.*)

The Court must determine whether Defendant has met its burden of persuasion on summary judgment—either negating an essential element of Plaintiffs' case or else demonstrating that Plaintiffs failed to sufficiently establish an element on which they will bear the burden of proof at trial.

Defendant points to *Howard* to argue that if Defendant's negligence was "not necessarily the cause" of Plaintiffs' injuries, then res ipsa loquitur does not apply.  *See* 129 P.3d at 132.  In that case, the plaintiff suffered a seizure at his home and was taken to St. James Community Hospital.  *Id.* at 128.  While at the Hospital, the plaintiff suffered another seizure.  *Id.* at 129.  He then became combative and violent with Hospital staff, and the attending physician ordered the plaintiff be placed in restraints.  *Id.*  After his release from the Hospital, the plaintiff experienced physical pain and was diagnosed with back sprain and strain. *Id.*

The plaintiff sued the Hospital and other defendants for the alleged injuries

he suffered while being treated as a patient. *Id.* At trial, the jury returned a verdict for the defendants. *Id.* at 128. On appeal, the plaintiff argued that the district court erred in refusing his proposed jury instruction regarding the application of res ipsa loquitur. *Id.* at 132. He argued there was no question that the restraints—the instrumentality that caused his injuries—were in the exclusive control of the Hospital. *Id.* The Montana Supreme Court disagreed, however, that this was enough to submit the question of res ipsa loquitur to the jury. While the court acknowledged "it is possible that Howard's back injury resulted from the use of restraints," it noted further that "evidence also supports a finding that the seizures alone could have caused the injury." *Id.* Accordingly, "[i]f the restraints were not necessarily the cause of Howard's injury, res ipsa loquitur does not apply." *Id.*

Defendant also cites *Bonilla*, where the Montana Supreme Court affirmed summary judgment for the defendant because res ipsa loquitur did not apply. In that case, the plaintiff attended a concert at the University of Montana and was required to sit in one of the venue's chairs despite his insistence that the chair would be inadequate to support his weight. 116 P.3d at 824–25. During the concert, the plaintiff tied a tape recorder to the railing beside his seat, and security personnel requested that it be removed. *Id.* at 825. The plaintiff then "yank[ed]" the tape recorder from the railing, and the chair—which the University had required he use—collapsed under him, causing him to fall and fracture his tailbone.

*Id.* He sued the University, and the latter moved for summary judgment on several grounds including that the plaintiff had failed to provide evidence that it breached any duty owed to him. *Id.* The plaintiff opposed the motion on the grounds of res ipsa loquitur, asserting that "the chair's collapse, in and of itself, allow[ed] the inference that it broke as a result of some negligence by the University." *Id.* at 827. The district court concluded that the doctrine did not apply and granted summary judgment for the University. *Id.* at 825, 827.

On appeal, the Montana Supreme Court affirmed, agreeing with the district court that the plaintiff had not sufficiently eliminated other responsible causes. Noting that it was "undisputed for purposes of summary judgment that the University's chair collapsed . . . simultaneous to Bonilla breaking the leather strap which was holding his tape recorder," the court concluded that the plaintiff failed to raise a genuine issue of material fact "that would negate the possible causal connection between this action and the chair's collapse." *Id.* at 826, 828.

In reviewing these cases cited by Defendant, it is clear that Defendant's reliance on *Howard* is misplaced. As discussed above, the Montana Supreme Court was not reviewing a summary judgment ruling based on undisputed facts, but rather, whether res ipsa loquitur should have been included in the jury instructions. Thus, instead of applying de novo review to the district court's decision on summary judgment, the court only reviewed the refusal to give a res

20

ipsa loquitur instruction for abuse of discretion.[2]

Further, the facts there do not align with those here.  In contrast to the circumstances in *Howard*, neither party disputes that whatever injuries Plaintiffs suffered were the result of their fall from the chairlift.  The evidence there, unlike here, did not even establish whether a particular instrumentality was necessarily the cause of the plaintiff's alleged injuries.

The distinctions between the instant action and *Bonilla* more plainly illustrate why summary judgment is not appropriate here.  In that case, it was undisputed that the plaintiff created a strong force—a "big yank"—that precipitated the collapse of the chair.  116 P.3d at 825.  Given those undisputed facts, the plaintiff could not sufficiently eliminate other responsible causes.  In contrast, here, there is a genuine dispute of material fact over what Sun did or did not do in the moments preceding the chair's fall from the haul rope.  The parties dispute (1) which direction Sun's snowboard was pointed when he boarded the chairlift, (2) whether a misload actually occurred, (3) whether and to what extent the lift attendant witnessed the incident, (4) what Plaintiffs recall regarding

---

[2] The court said "[t]he standard of review for a district court's refusal to issue a proposed jury instruction is whether the court abused its discretion.  In reviewing for abuse of discretion, this Court does not determine whether it agrees with the trial court.  Rather, we consider whether the trial court, in its exercise of discretion, acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reasons in view of all circumstances." *Howard*, 129 P.3d at 130.

whether Sun's snowboard edge caught on the ramp, (5) whether and to what extent the Plaintiffs were already airborne when the chair detached from the haul rope, (6) whether there was an edge catch mark on the ramp in the immediate aftermath of the incident, (7) and whether an edge catch would produce the force necessary to compromise the integrity of the clip or cause the chair to detach from the haul rope.  (Doc. 64 at 6–9, 13, 16–18.)  In fact, Defendant expressly acknowledges that there is a question of fact as to what caused the chair to detach and cause plaintiff's injuries.  (Doc. 50 at 20.)

Hence, there are questions of material fact that go to the second element of the *Tompkins* test: "whether other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence."  645 P.2d at 406.  Summary judgment is, therefore, not appropriate.  *See id.* ("If in fact, the accident speaks of negligence, and if the undisputed evidence does not show the accident resulted from the conduct of another, then the doctrine of res ipsa loquitur may attach.").

Accordingly, Defendant has failed to meet its burden under Rule 56, and the Court recommends that Defendant's Motion for Partial Summary Judgment be DENIED.

/ / /

/ / /

22

**B.    Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs seek summary judgment on the following issues: (1) Count II of the Complaint—res ipsa loquitur, (2) Defendant's Fifth Affirmative Defense that Plaintiffs' claims are barred by a release, (3) Defendant's Second and Third Affirmative Defenses regarding contributory negligence, specifically as to Getchell, and (4) Defendant's Seventh Affirmative Defense that Plaintiffs failed to mitigate their damages.  (Doc. 52 at 2.)

Defendant does not oppose Plaintiffs' motion regarding Defendant's affirmative defense that Plaintiffs' claims are barred by a release.  (Doc. 65 at 6; *see* Doc. 2 at 4.)  Accordingly, the Court recommends Plaintiffs' motion be GRANTED as to Defendant's Fifth Affirmative Defense.  The remaining issues will be discussed in turn.

**1.    Res Ipsa Loquitur**

Plaintiffs argue that the undisputed facts establish that Plaintiffs have satisfied the three elements of res ipsa loquitur as set forth in the Restatement (Second) of Torts and adopted by the Montana Supreme Court.  (Doc. 53 at 21.)  In response, Defendant restates the points argued in its own motion for summary judgment on this issue.  (Doc. 65 at 20–27.)

As discussed above, there is a genuine dispute of material fact as to "whether other responsible causes, including the conduct of the plaintiff and third

persons, are sufficiently eliminated by the evidence." *Tompkins*, 645 P.2d at 406.

Summary judgment is, therefore, not appropriate for either party. The Court

recommends that Plaintiffs' motion for partial summary judgment on Count II of

the Complaint be DENIED.

### 2.    Contributory Negligence

In its Second and Third Affirmative Defenses, respectively, Defendant

asserts that "Plaintiffs' alleged injuries were caused by their own negligence" and

that "Plaintiffs' claims are barred, in whole or in part, by their own negligence

pursuant to Mont. Code Ann. § 27-1-702."  (Doc. 2 at 4.)

Argued in the alternative to their res ipsa loquitur motion, Plaintiffs seek

summary judgment in their favor on these affirmative defenses as they apply to

Getchell.  (Doc. 53 at 26.)  Plaintiffs assert that there are "no facts in the record to

support Defendant's position that Plaintiff Getchell caused or contributed to the

incident in question."  (*Id.* at 26–27.)  Defendant "concedes that Getchell's conduct

did not contribute to Plaintiffs' injuries," and argues only that "any damages

Getchell incurred against [Defendant] must be reduced—if not precluded—

because of Plaintiff Sun's contributory negligence."  (Doc. 65 at 27.)

The apportionment of damages is not before the Court on summary

judgment and will be determined at trial.  *See* Mont. Code. Ann. § 27-1-703(4).

Defendant concedes that Getchell's alleged injuries were not caused by his own

negligence and, therefore, his claims are not barred or diminished on those grounds.  Accordingly, the Court recommends that Plaintiffs' motion for partial summary judgment on the application of Defendant's Second and Third Affirmative Defenses to Getchell be GRANTED.

### 3.    Mitigation of Damages

In its Seventh Affirmative Defense, Defendant asserts that "Plaintiffs failed to reasonably mitigate their alleged damages."  (Doc. 2 at 4.)

Plaintiffs argue that "Defendant has not presented facts or met its burden that Plaintiffs failed to mitigate their damages."  (Doc. 53 at 27.)  Plaintiffs contend that Sun "sought care as the pain in his shoulder worsened and complied with his doctor's recommendations," while "Getchell has complied with his medical treatment providers and has gone over and above in his treatment.  (*Id.* at 28, 32.)  In response, Defendant contends that Getchell "fail[ed] to engage in any mental health treatment or physical therapy" and Sun "fail[ed] to follow the instructions of his physical therapist."  (Doc. 65 at 17, 18.)  In reply, Plaintiffs argue that Getchell merely declined to follow his providers' "recommendations," as opposed to their "advice," and otherwise dispute Defendant's characterization of the facts as they relate to Sun.  (Doc. 68 at 2–5.)

"Mitigation of damages is an affirmative defense for which the burden of proof falls on the party opposing the damages."  *Billings Clinic v. Peat Marwick*

*Main & Co.*, 797 P.2d 899, 912 (Mont. 1990).  The standard for mitigation is what "an ordinary prudent person [would] be expected to do if capable, under the circumstances."  *State v. Kalal*, 204 P.3d 1240, 1241–42 (Mont. 2009) (quoting *McPherson v. Kerr*, 636 P.2d 852, 856 (Mont. 1981)).  This does not include mitigation efforts that are otherwise "unreasonable or impracticable."  *Id.* at 1242.  The issue of a plaintiff's mitigation of damages is generally a question of fact for the jury.  *Billings Clinic*, 797 P.2d at 912.

Here, there are disputed material facts as to whether Plaintiffs took the steps expected of an ordinary prudent person in addressing their alleged injuries.

Plaintiffs seek damages for "mental anguish" (Doc. 1 at 4), but the undisputed evidence does not rule out a jury's determination that either or both Plaintiffs failed to fully engage in mental health treatment.  (*See* Doc. 66 at 19, 27–28.  *See also* Docs. 65 at 16–17, 19; 68 at 2–5.)  Plaintiffs also seek damages for "physical pain" and "a change in the course of their lifestyles" (Doc. 1 at 4), but the undisputed evidence does not rule a jury's determination that Getchell failed to fully engage in physical therapy for his alleged traumatic brain injury, or that Sun failed to fully engage in proper self-care or inflammation management for his shoulder.  (*See* Doc. 66 at 18–20, 26–28.  *See also* Docs. 65 at 16–18; 68 at 2–4.)

Plaintiffs point out that, under Montana law, the burden of proof falls on Defendant to prove that Plaintiffs failed to mitigate their damages.  But this is not

trial.  In opposing this motion for partial summary judgment, Defendant need only show there is a genuine issue of material fact for the determination of the jury. Plaintiffs, meanwhile, as the moving party, carry the burden of persuasion on the issue of mitigation.  Based on the evidence and argument before the Court, this is a burden they have not sustained.  Whether the steps taken by Plaintiffs on and after December 5, 2020, were consistent with those of an ordinary prudent person under the circumstances is a question for the jury.

Accordingly, the Court recommends that Plaintiffs' motion for partial summary judgment on Defendant's Seventh Affirmative Defense be DENIED.

## IV.   CONCLUSION

Based on the foregoing, IT IS RECOMMENDED as follows:

1.     Defendant's Motion for Partial Summary Judgment (Doc. 48) should be DENIED;

2.     Plaintiffs' Motion for Partial Summary Judgment (Doc. 52) should be GRANTED as to Defendant's Fifth Affirmative Defense and Defendant's Second and Third Affirmative Defenses as to Plaintiff Getchell, and DENIED in all other respects.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the

/ / /

27

parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

IT IS ORDERED.

DATED this 16th day of July, 2024.

TIMOTHY J. CAVAN
United States Magistrate Judge